UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 3:19-CR-145 |
| v. | ) |
| | ) JUDGE VARLAN |
| DUSTY WILLIAM OLIVER | ) |

## **PLEA AGREEMENT**

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, DUSTY WILLIAM OLIVER, and the defendant's attorney, Steve McGrath, have agreed upon the following:

1. The defendant will plead guilty to both counts in the indictment:

    a) Counts One and Two charge the defendant with aiding and abetting an aggravated sexual assault in the Great Smoky Mountains National Park, in violation of 18 U.S.C. §§ 2, 7(3) and 2241(a).

    The punishment for these offenses is up to life imprisonment, a period of supervised release of five (5) years up to life, special assessment, forfeiture and restitution.

2. There are no remaining counts in the indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crimes charged. Specifically, the elements of the offenses are as follows:

    a. The defendant caused the victim to participate in a sexual act defined in 18 U.S.C. § 2246(2);
    b. Defendant used force against the victim or threatened him or caused him to believe that he or any other person would be killed, suffer serious bodily injury, or be kidnapped;
    c. Defendant did these acts knowingly;
    d. The acts occurred within the territorial jurisdiction of the United States.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

In the early morning hours of June 13, 2012, an adult male, RP, called 911 and reported he had been raped by two men in the Great Smoky Mountains National Park (GSMNP) in the Eastern District of Tennessee, a place within the territorial jurisdiction of the United States. RP reported that on June 12, 2012, he was homeless and was drinking heavily during the day and evening. RP was walking along Chapman Highway in Knoxville Tennessee. A "boxy hatchback," pulled up beside him. Two men, now known to be the defendant and co-defendant RICHARD GRAHAM (hereinafter "co-defendant GRAHAM,") were in the vehicle and asked if RP wanted a ride to the races in Bristol. RP, being a race fan, said sure and got into the back seat. However, RP soon realized they were not going in the direction of Bristol and recognized when they pulled into a large parking lot he was in the GSMNP.

One of the defendants suggested a hike and RP agreed. They started up the Appalachian Trail (AT) with the "smaller" defendant in front of RP and the "larger" defendant walking behind RP. RP began feeling uncomfortable, it was becoming dark, he was unfamiliar with his surroundings and every time he tripped or stumbled, the larger defendant grabbed him from behind and pulled him up. Each time the larger defendant became more and more aggressive.

When they came to a large rock, on the trail it was completely dark. The smaller defendant sat on the rock in front of RP and the larger defendant sandwiched RP between the two. Without

2

RP's consent, the smaller defendant forced RP to place his mouth on the smaller defendant's penis while at the same time the larger defendant stood behind RP, pulled RP's shorts down and forced his penis into RP's anus. While the aggravated sexual assault was happening, RP told the defendant and co-defendant GRAHAM he did not want "this" to happen and the larger defendant said: "This is going to happen." During the assault RP was in fear the defendant and co-defendant GRAHAM were going to kill him and leave him in the dark woods after the attack.

After the attack, the three walked back to the car and drove to a gas station. The defendant and co-defendant GRAHAM drove off. RP went back into the store, reported he had been kidnapped, and asked that the police be called.

RP was taken to the University of Tennessee (UT) Medical Center where a rape kit was collected. Anal and oral swabs were taken from RP, along with a substance from his underwear, to send to the Federal Bureau of Investigation (FBI) for forensic examination. DNA from an unknown male was found on the anal swab taken from RP.

With no other leads, the investigation stalled until November of 2015 when another similar aggravated sexual assault was reported in the GSMNP.

On November 3, 2015, in the late evening, an adult male, CN, reported he had just been raped in the GSMNP. CN, a self-admitted homeless man addicted to drugs at the time, reported he was walking along Chapman Highway[1] towards Seymour, Tennessee when two men sitting in what he recalls as a 2002 Mitsubishi Eclipse in a parking lot asked him for a lighter. They began chatting and the defendant and co-defendant GRAHAM asked CN if he wanted a ride to the GSMNP. CN accepted.

---

[1] In the vicinity RP had reported being approached by his attackers.

3

Case 3:19-cr-00145-TAV-HBG   Document 25   Filed 11/25/19   Page 3 of 11   PageID #: 54

CN reported specific information about the defendant and co-defendant GRAHAM. The driver, now known as the defendant, had a tattoo on his left arm of a skull/cowboy hat/snake and a cross tattooed on his left thumb, further, he was wearing a t-shirt with a picture of Walter from Jeff Dunham with "You're an idiot" on the front. CN reported they stopped at a Shell station at 10623 Chapman Highway in Seymour, and a Marathon gas station at 2870 Goose Gap Road in Sevierville where the defendant had gone in and purchased items.

Around 20:30 hours they stopped at Look Rock Trail which is located in the GSMNP. The three hiked up to Lookout Tower. On the way back down, CN reported the defendant and co-defendant GRAHAM sandwiched CN between them. CN was, without consent, anally penetrated by one of the defendant's penis from behind while the other co-defendant, who was in front of CN, forced CN to place his mouth on the co-defendant's penis. During the aggravated sexual assault CN told both the defendant and co-defendant GRAHAM to "stop" and "quit" but they ignored him saying things like: "Do you want us to suck your cock?" Out of fear of receiving bodily injury, CN did not attempt to fight off his attackers.

After the assault, the defendant and co-defendant GRAHAM drove CN to the intersection of Route 129 and Kingston Pike in Knoxville telling him to get out of the car. From there, CN walked to UT Medical Center. A rape kit was performed and redness about the anus was found. Buccal swabs and CN's underwear were taken for examination to the Tennessee Bureau of Investigation (TBI). The forensic exam revealed spermatozoa of an unknown male found in CN's underwear.

CN provided photos from his phone of the co-defendant, GRAHAM, who was riding in the passenger seat, to law enforcement. The Shell and Marathon station had video footage of the defendant being in the station at the time in question, wearing the "You're an idiot" shirt as described by CN. The photos of both defendant and co-defendant GRAHAM were put out on social

4

media by the Blount County Sheriff's Office (BCSO) to assist in identifying the two defendants. Immediately, both the defendants were positively identified.

On July 17, 2018, law enforcement interviewed both defendant and co-defendant GRAHAM. Both identified themselves in the photographs put out on social media by BCSO. Co-defendant GRAHAM at first denied having sex with CN. Then, he changed his story and admitted that he knew CN didn't want to have sex, but the defendant wanted it to happen. Co-defendant GRAHAM told law enforcement he acquiesced and went along with the aggravated sexual assault. Co-defendant GRAHAM admitted he forced CN to give co-defendant GRAHAM oral sex, and the defendant forced himself on CN, penetrating him anally with his penis.

Both defendants voluntarily provided buccal swab samples for DNA analysis.

The buccal swabs of defendant and co-defendant GRAHAM were sent for comparison of the unknown male's DNA findings for both victims RP and CN. In October of 2018, the results showed the anal swab from RP came back with 100% certainty the DNA found was that of co-defendant GRAHAM. In May of 2019, the DNA comparison showed that a moderate support ratio of DNA found in the underwear of CN was that of co-defendant GRAHAM.

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

        a) the right to plead not guilty;

        b) the right to a speedy and public trial by jury;

        c) the right to assistance of counsel at trial;

        d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

a) The Court may impose any lawful terms of imprisonment, any lawful fines, and any lawful terms of supervised release up to the statutory maximums;

b) The Court will impose special assessment fees as required by law; and

c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant

is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. The defendant agrees that the Court shall order restitution, pursuant to any applicable provision of law, for any loss caused to: (1) the victim(s) of any offense charged in this case (including dismissed counts); and (2) the victim(s) of any criminal activity that was part of the same course of conduct or common scheme or plan as the defendant's *charged* offense(s).

10. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may

7

be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

    a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

    b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

    c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

11. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

8

a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

12. The defendant acknowledges that the defendant has been advised and understands that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: (1) where the defendant resides; (2) where the defendant is employed; and (3) where the defendant is a student. The defendant understands that the requirements for registration include providing: (1) the defendant's name; (2) residence address; and (3) the names and addresses of any places where the defendant is, or will be, an employee or a student, among other information. The defendant further understands that the requirement to keep the registration current includes informing at least one

jurisdiction in which the defendant resides, is an employee, or is a student not later than three business days after any change of name, residence, employment, or student status. The defendant has been advised, and understands, that failure to comply with these obligations will subject the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by imprisonment, a fine, or both.

13. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

14. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

15. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

11/25/2019
Date

By: _____
Jennifer Kolman
Assistant United States Attorney

11-23-19
Date

_____
Dusty William Oliver
Defendant

11-23-19
Date

_____
Steve McGrath
Attorney for the Defendant

11